IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

VICKIE S. COBB,                )
                               )
         Plaintiff,            )
                               )
v.                             )   Case No. CIV-12-205-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
         Defendant.            )

## OPINION AND ORDER

Plaintiff Vickie S. Cobb (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 4, 1964 and was 44 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant worked in the past as an assembler and home health aide. Claimant alleges an inability to work beginning August 24, 2006 due to limitations resulting from pain, heel fractures, arthritis, thrombosis in her leg, fibromyalgia, anxiety, and

depression.

## Procedural History

On December 6, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 24, 2008, an administrative hearing was held before ALJ Lantz McClain in Tulsa, Oklahoma. On January 12, 2009, the ALJ issued an unfavorable decision. On March 15, 2012, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) improperly applying the grids; (2) failing to properly consider the medical

source evidence; and (3) engaging in a faulty credibility determination.

## Application of the Grids

In his decision, the ALJ found Claimant suffered from the severe impairments of stress fractures of the heels, plantar fasciitis, deep vein thrombosis of the right leg, and fibromyalgia. (Tr. 11). He concluded Claimant retained the RFC to perform a full range of sedentary work. (Tr. 12). The ALJ applied the grids to determine Claimant was not disabled. (Tr. 19).

Claimant contends the ALJ improperly applied the grids in her case when she suffered from non-exertional impairments which would preclude their application. In order to help evaluate the step five requirement, whether or not there are sufficient jobs in the economy that the claimant can perform given his or her age, education, and work experience, the Social Security Administration has created Medical-Vocational Guidelines, also known as "the grids." *See* 20 C.F.R. § 404.1567; 20 C.F.R. Pt. 404, Subpt. P, App. 2; Trimiar v. Sullivan, 966 F.2d 1326, 1332 (10th Cir. 1992). Five degrees of residual functional capacity are outlined in the grids by general exertional level-sedentary, light, medium, heavy, and very heavy exertion. 20 C.F.R. § 404.1569a; Trimiar, 966 F.2d at 1332 n. 22. Residual functional capacity reflects "the maximum

5

degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).  If the ALJ finds that a claimant's exertional capacity, education, age, and skills fit precisely within the criteria of a particular grid level, the ALJ may conclude the claimant is not disabled.  Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The grids, however, may not be used where a claimant has nonexertional impairments which further limit the range of jobs he can do but, rather, the Grids may only be used as a guideline in evaluating the case.  Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

Non-exertional limitations affect a claimant's ability to meet the demands of jobs that do not involve strength.  20 C.F.R. § 404.1569a(a).  Examples cited include "(1) difficulty functioning because you are nervous, anxious, or depressed; (2) difficulty with maintaining attention or concentration; (3) difficulty understanding or remembering detailed instructions; (4) difficulty seeing or hearing; (5) difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; (6) difficulty with manipulative or postural functions such as reaching, handling, stooping, climbing, or crawling." 20 C.F.R. § 404.1569a(c).

Claimant asserts she suffers from pain, anxiety, depression, and postural limitations which would all preclude the ALJ's use of the grids. On March 24, 2008, Dr. Jeffrey L. Jenkins acknowledged that Claimant had "a fairly high anxiety and depression score and . . . she has made some suicide attempts in the past. She continues to be pretty depressed." (Tr. 426). On August 1, 2008, he also referenced Claimant's depression and anxiety as "making it difficult for her to maintain employment. I thin (sic) she will have difficulty with concentration and with work attendance on a regular basis." (Tr. 436). The ALJ addressed these findings by observing that Claimant had no outpatient or inpatient treatment for behavioral health issues. He also acknowledged that her primary care physician had prescribed Cymbalta for her condition. (Tr. 17).

Application of the grids "is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991). Regardless of whether Claimant's depression and anxiety were treated outside of her primary physician, Dr. Jenkins found that the conditions existed, required treatment, and affected her functional abilities. While the ALJ stated he considered the Watkins v. Barnhart, 350 F.3d 1297 (10th Cir. 2003) factors for evaluating the opinions of treating physicians, he did not state that he was affording Dr. Jenkins' opinions with reduced weight or go through

the required analysis to do so. The record would indicate that Claimant's depression and anxiety represent non-exertional limitations which would preclude the use of the grids. On remand, the ALJ shall evaluate these conditions and order further consultative examinations if necessary to ascertain the impact upon Claimant's ability to engage in work-related activities.

Moreover, on March 21, 2007, Dr. Carmen Bird found Claimant had postural limitations which required consideration as non-exertional impairments. She noted Claimant had severe tenderness about the ankles at the plantar fascia, movement of the knees caused pain, and experienced pain due to fractures in her heels. (Tr. 216-17). She found Claimant could only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 217). These limitations were not taken into account by the ALJ in the application of the grids.

Additionally, the record is replete with references to Claimant's considerable pain, primarily caused by injury to her lower extremities. The ALJ shall re-evaluate whether this pain precludes the application of the grids.

**Evaluation of the Treating Physician's Opinion**

Claimant also contends the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Paul Bizzle. On October 26, 2007, Dr. Bizzle reported persistent numbness and tingling in

Claimant's lower extremities due to bilateral calcaneal stress fractures which required immobilization during healing, deep vein thrombosis, and plantar fascitis. An EMG also revealed the presence of an L5-S1 radiculopathy on the right requiring epidural steroid blocks.  He also felt Claimant has a bulging disk at L5-S1. Claimant also experienced pain, numbness and tingling in the cervical region.  EMG and nerve conduction studies revealed the presence of a C7 radiculopathy.  Steroid injections did not alleviate the pain. (Tr. 342). Dr. Bizzle felt Claimant would have trouble with even sedentary work.  (Tr. 343).

Defendant "concedes the error" of the ALJ in not discussing the weight of these opinions but argues it was harmless error because they did not give rise to a finding of disability.  In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not

entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the

ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Given the extent and length of Dr. Bizzle's treating relationship with Claimant and the nature and severity of his findings, this Court cannot agree that the omission of the necessary analysis of Dr. Bizzle's opinions represented harmless error. The findings are sufficiently severe to lead to a finding of disability if they are properly weighed together with the other medical evidence in the record.

Claimant also contends the ALJ failed to properly weigh Dr. Jenkins' opinions. This Court has already determined the analysis of this opinion was inadequate.

Claimant states the non-examining consultant's opinion was not properly weighed. Since the ALJ did not provide findings of the weight given to any professionals' opinion, the ALJ will be required to reassess this opinion as well on remand.

### Credibility Analysis

Although the ALJ stated that not all of Claimant's statements as to the extent of her limitations were credible, he did not provide sufficient detail for assessment of his basis for rejection of Claimant's testimony. It is well-established that "findings as

to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

On remand, the ALJ shall reconsider his findings on credibility and fulfill his duty to affirmatively link his findings to the medical record.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 18th day of September, 2013.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma